Honorable Juelanne Dalzell Jefferson County Prosecuting Attorney P. O. Box 1220 Port Townsend, Washington 98368
Dear Prosecutor Dalzell:
By letter previously acknowledged, you requested our opinion on the following questions, which we have renumbered and paraphrased:
 1. Does RCW 79.64.110(3), as amended in 2007, allow a school district to transfer surplus state forest land funds deposited in a voter-approved school district debt service fund pursuant to RCW 79.64.110(2)(b) to a district capital projects fund, when a vote approving a general obligation bond did not contemplate such transfers, and the bond issue was approved before the enactment of the 2007 amendment?
 2. In the future, when a school district brings a bond proposition before its qualified voters, is the school district required to inform the voters that the revenues raised from the levy may be used not only for debt service repayment but also for capital fund projects, as allowed by Laws of 2007, chapter 503?
 3. Assuming the transfer described above is lawful, how would the school district, the treasurer, and the assessor determine the amount of money received from state forest lands, given that the Department of Natural Resources manages both state forest lands and county forest lands in [original page 2] Jefferson County, and it is not clear how to allocate the forest land revenue between these sources?
 BRIEF ANSWER
In response to your first question, Laws of 2007, chapter 503 amended RCW 79.64.110(3) and related statutes to permit state forest land revenue to be transferred from a school district's debt service fund to its capital projects fund, to the extent that such revenue is not necessary for payment of debt service on school district bonds. Nothing limits this authority to state forest land revenue received after the effective date of the 2007 amendments.
The second question, which asks whether a school district is required to inform voters that "revenues raised from the levy" may be used not only for debt service repayment but also for capital fund projects, is based on an erroneous premise. RCW 79.64.110(3) does not authorize a school district to transfer tax revenues raised by a voter-approved debt financing levy from the district's debt service fund to its capital projects fund or otherwise address the use of funds raised by levies. Accordingly, there would be no occasion for a school district to advise voters that such a transfer may be made. RCW 79.64.110(3) applies only to state forest land revenue, and such revenue is not raised from a voter-approved levy.
In response to your third question, the school district's accounts should reflect the amount of state forest land revenue received and deposited into its debt service account. The amount of state forest land revenue distributed to a school district pursuant to RCW 79.64.110(2)(b), the subject of your first question, may also be reflected in records maintained by the state treasurer and the county in which the school district is located.
 ANALYSIS 1. Does RCW 79.64.110(3), as amended in 2007, allow a school districtto transfer surplus state forest land funds deposited in avoter-approved school district debt service fund pursuant toRCW 79.64.110(2)(b) to a district capital projects fund, when a voteapproving a general obligation bond did not contemplate such transfers,and the bond issue was approved before the enactment of the 2007amendment?
RCW 28A.320.330 identifies separate funds that school districts must establish. One of these is a debt service fund. RCW 28A.320.330(3).[1]
Revenue received by the state from the lease of state forest land, or the sale of specified natural resources from such land, is deposited into the debt service fund. RCW 28A.320.330(3).
In 2007, RCW 79.64.110, the statute about which you inquire, and RCW 28A.320.330(3), were amended to permit state forest land revenue that is deposited into a school district's debt service fund to be transferred to the school district's capital projects account under certain circumstances. Laws of 2007, ch. 503, §§ 1(3), 2(3). The legislation added a new [original page 3] subsection (3) to RCW 79.64.110 to provide that "[a] school district may transfer amounts deposited in its debt service fund pursuant to this section into its capital projects fund as authorized in RCW 28A.320.330." Laws of 2007, ch. 503, § 1(3). The 2007 act also amended RCW 28A.320.330(3) to read:
 A debt service fund to provide for tax proceeds, other revenues, and disbursements as authorized in chapter 39.44 RCW. State forest land revenues that are deposited in a school district's debt service fund pursuant to RCW 79.64.110 and to the extent not necessary for payment of debt service on school district bonds may be transferred by the school district into the district's capital projects fund.
Laws of 2007, ch. 503, § 2(3) (amended language underlined). A parallel amendment was made to RCW 28A.320.330(2) to require that money deposited into a school district's capital projects fund shall include "state forest revenues transferred pursuant to subsection (3)" of RCW 28A.320.330. Laws of 2007, ch. 503, § 2(2). As a result of these amendments, a school district may transfer state forest land revenue out of its debt service fund only if the revenue is "not necessary for payment of debt service on school district bonds ". RCW 28A.320.330(3). If state forest land revenue in the debt service fund is necessary for bond repayment, the revenue cannot be transferred out of the debt service fund until the bond obligations have been satisfied.[2] Conversely, if a school district's debt service fund contains state forest land revenue which is not necessary for repayment of bonds, including revenue deposited in the debt service fund before the 2007 amendments were enacted, such revenue may be transferred to the school district's capital projects fund.
The authority provided to school districts by RCW 79.64.110(3) with respect to transferring state forest land revenue is not otherwise limited and does not depend on whether the state forest land revenue was received before or after the effective date of the 2007 amendment. In our opinion, then, the 2007 amendments apply to state forest land revenues in the district's debt service fund on the date the 2007 amendments became effective, as well as funds later deposited into the debt service fund. A school district may transfer such revenue from its debt service fund to its capital projects fund to the extent that it is not necessary for payment of the debt service fund on the district's bonds.
2. In the future, when a school district brings a bond propositionbefore its qualified voters, is the school district required to informthe voters that the revenues raised from the levy may be used not onlyfor debt service repayment but also for capital fund projects, asallowed by Laws of 2007, chapter 503?
This question is based on the premise that Laws of 2007, chapter 503
allows transfer of voter-approved levy proceeds from the district's debt service fund to its capital projects fund. [original page 4] This premise is incorrect. Chapter 503 does not authorize transfer of revenue raised from a district's voter-approved debt financing levy from the debt service fund to the capital projects fund or otherwise address the use or transfer of funds raised by levies. Accordingly, a school district would not have the occasion to inform voters that such a transfer may be made. Rather, as explained in response to your first question, as amended in 2007, RCW 79.64.110(3) and RCW 28A.320.330(3) only authorize transfer of state forest land revenue from a school district's debt service fund to its capital projects fund, and only under limited circumstances.
To the extent the question may suggest that state forest land revenue constitutes "revenues raised from the levy," the suggestion would not be correct. State forest land revenue is raised by the Department of Natural Resources ™ lease of state forest land or sale of valuable materials located on or in such land. See generally RCW 79.22; RCW 79.64.110. A sale or lease occurs when the Department of Natural Resources finds that it is in the best interest of the state. Its decision is not driven by or a consequence of school district levies. RCW 79.22.050.
We have not located any law that requires a school district to inform voters in a school district levy election that state forest land revenue might become available to the district during the time a school district levy is outstanding, or explain how forest land revenue may be used.
3. Assuming the transfer described above is lawful, how would theschool district, the county treasurer, and the county assessor determinethe amount of money received from state forest lands, given that theDepartment of Natural Resources manages both state forest lands andcounty forest lands in Jefferson County, and it is not clear how toallocate the forest land revenue between these sources?
Your final question predominantly is an accounting inquiry, rather than a legal question that may be resolved through an opinion of the Attorney General. Thus, we here address only the legal aspect of your question.
The state forest land revenue about which you have inquired is "state forest land funds deposited in a voter-approved debt service fund pursuant to RCW 79.64.110(2)(b)." See Question 1, above. RCW 79.64.110(2)(b) directs how money derived from the lease or sale of state forest land acquired under RCW 79.22.010 must be distributed.[3]
It provides:
 Fifty percent shall be prorated and distributed to the state general fund, to be dedicated for the benefit of the public schools, and the county in which the land is located according to the relative proportions of tax levies of all taxing districts in the county. The portion to be distributed to the state general fund shall be based on the regular school levy rate under RCW 84.52.065 and the levy rate for any maintenance and operation special school levies. With regard to the portion to be distributed to the counties, the department shall certify to the state treasurer the amounts to be distributed within seven working days of receipt of the money. The state treasurer shall distribute funds to the counties four times per month, with no more than ten days between each payment date. The money [original page 5] distributed to the county must be paid, distributed, and prorated to the various other funds in the same manner as general taxes are paid and distributed during the year of payment.[4]
Pursuant to RCW 43.09.200, every public institution and public account must keep all documents necessary to show the sources of public income and prove the validity of every transaction. Therefore, presumably, the local school district and county treasurer would maintain records showing the distribution of state forest land revenues received under RCW 79.64.110(2)(b).
If a school district or the county does not have records showing the receipt of state forest land revenue distributed pursuant to RCW 79.64.110(2)(b), the information may be available through the Department of Natural Resources, or the Office of the State Treasurer. It is our understanding from staff in the Office of the State Treasurer and the Department of Natural Resources that when state forest land revenues are transmitted by the state treasurer to a county, the treasurer provides the county with a remittance advice that contains separate line item entries for each source of revenue being transmitted.[5]
We trust the foregoing will be of assistance.
Sincerely,
ROB MCKENNA Attorney General
ANNE EGELER Deputy Solicitor General
:pmd
[1] Your question refers to the district's debt service fund as "voter approved." RCW 28A.320.300(3) requires a school district to establish a debt service fund "to provide for tax proceeds." The fund is not "voter approved. "
[2] Limiting transfers to situations in which the forest land revenue is not necessary for repayment of bonds comports with a provision in the contract clause of the Washington State Constitution, which guarantees that "[n]o . . . law impairing the obligations of contracts shall ever be passed." Const. art. I, § 23. Whether forest land revenue is necessary for bond payment is fact dependent. This opinion does not address whether such revenue may be transferred in any specific circumstances and, instead, is confined to a general discussion of the applicable law.
[3] State forest land acquired under RCW 79.22.010 was acquired by the state by gift or purchase.
[4] To the extent that the Department of Natural Resources manages state forest land in Jefferson County acquired by the state under RCW 79.22.040, revenue from that land must be distributed as directed by RCW 79.64.110(1). It is our understanding that the Department does not manage land owned by the county, and so we assume the reference in your question to "county forest lands" means state forest land acquired under RCW 79.22.040. Under RCW 28A.320.330(3), the state forest land revenues that may be transferred from a school district's debt service fund to the capital projects fund are "[s]tate forest land revenues that are deposited in a school district's debt service fund pursuant to RCW 79.64.110 ". RCW 28A. 320.330(3).
[5] We recognize that a school district's debt service fund may include money derived from sources other than state forest land. At any given time, there may be accounting issues as to how much of the balance in the debt service fund is state forest land revenue that may be subject to transfer under the 2007 amendments. We do not attempt to resolve that issue here, other than to point out that the law only permits the transfer of state forest land revenues, and only to the extent that the revenue is not necessary for payment of school district bonds. A district should be prepared to show that any transfers out of the debt service fund to the capital projects fund include only state forest land revenues and do not include money derived from some other source.